UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EUGENE THOMPSON, | |
| Plaintiff, | No. 22 C 1938 |
| v. | Judge Thomas M. Durkin |
| COOK COUNTY ET AL., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Eugene Thompson has sued Cook County, Cook County Sheriff Thomas Dart, Cook County Sheriff's Office ("CCSO") Electronic Monitoring Program Director Noel Acosta, and twelve CCSO officers (collectively "Movant Defendants") for allegedly applying an ankle monitor so tight that it caused significant damage to his right leg resulting in amputation. Cook County, Dart, Acosta, and certain officers move to dismiss. *See* R. 42. For the following reasons, that motion is granted in part and denied in part.

**Legal Standard**

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-

1

harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.,* 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Background

The following facts are taken from the allegations in Thompson's Second Amended Complaint ("SAC"). *See* R. 35. In April 2019, Thompson was arrested and placed on pretrial detention with electronic monitoring via an ankle band and monitor. *Id*. ¶ 22. Thompson had a history of diabetes and leg swelling, and was diagnosed with peripheral arterial disease ("PAD"), which affects circulation in his lower extremities, in early 2020. *Id*. ¶ 28. Following a denied request to remove his electronic monitoring restrictions to address his health issues, Thompson was AWOL from the electronic monitoring program from February through October 2020. *Id*. ¶ 29. On May 8, 2020, Thompson underwent arterial bypass surgery on his right leg to address circulation issues in that leg, which was successful and resolved his

complaints. *Id*. ¶¶ 30, 31. At that time, there was no indication that his right leg would require amputation. *Id*.

Thompson was reenrolled in the electronic monitoring program and "Defendants"[1] replaced the ankle band on his right leg around October 6 or 8, 2020. *Id*. ¶ 33. On October 12, 2020, Thompson complained to Defendants that the band was too tight on his right leg. *Id*. ¶ 34. He also told them that he had femoral artery bypasses on both legs and that his legs were swollen and would likely remain that way for some time. *Id*. That day, Defendants came to his host site and adjusted the ankle band. *Id*. ¶ 35. Following the adjustment, the band remained tightly pressed against his skin such that he was unable to get his fingers between the band and his ankle. *Id*. Thompson communicated this complaint to Defendants, which they ignored and advised that bands are "required to be tight to prevent tampering." *Id*. The band remained tightly on Thompson's right leg until early March 2021. *Id*.

On March 4, 2021, Thompson went to the hospital with complaints of pain in his right leg, and an exam revealed a femoral popliteal bypass graft occlusion and ischemia, for which surgery was recommended. *Id*. ¶ 36. The next day, Defendants removed the ankle band from Thompson's right leg after both he and medical staff advised that it needed to be removed for the procedure. *Id*. ¶¶ 37, 38. Thompson underwent surgery on March 9, 2021 and a wound washout four days later, after which his leg was revascularized, he had full motor strength, and there were no signs of progression to limb threat. *Id*. ¶ 39. Thompson was discharged on March 15, 2021,

---

[1] Thompson defines "Defendants" as including all named Defendants. R. 35 at 1–2.

3

and sometime in the next week, with knowledge of his surgery, Defendants tightly reapplied the ankle band to his right leg. *Id*. ¶¶ 39, 40.

On April 9, 2021, Thompson again presented to the hospital with right leg pain. *Id*. ¶ 41. An examination revealed his wound from the bypass surgery was not healing properly, and a skin graft was performed. *Id*. Although they knew about his skin graft, Defendants left the ankle band on Thompson's right leg until they moved it to his right wrist on April 23, 2021. *Id*. ¶¶ 41, 42. One week later, Thompson went to the hospital with swelling in his right leg, at which time it was determined his right leg was severely infected, ischemic, and needed to be amputated. *Id*. ¶ 47. His right leg was amputated above the knee that day. *Id*. ¶ 48.

Thompson alleges Defendants knew ankle bands are contraindicated for people with severe PAD, circulation issues, and histories of swelling and diabetes. *Id*. ¶ 43. He further asserts Defendants never consulted his medical providers on whether application of an ankle band was advisable given his medical conditions. *Id*. ¶ 46. Thompson claims that Defendants' tight application of the ankle band without regard for his health conditions caused his right leg amputation. *Id*. ¶ 49.

Thompson brings claims under 42 U.S.C. § 1983 for excessive force (Count I); *Monell* liability (Count II); failure to intervene (Count III), and conspiracy to deprive constitutional rights (Count IV). He also brings state law claims for indemnity (Count V), negligence (Count VI), and *respondeat superior* (Count VII). Defendants Cook

County, Sheriff Dart, Director Acosta, and Officers Colyer, Hicks, Rivera, Perkins, Shedor, and James Dunn move to dismiss.[2]

## Analysis

I. <u>Group Pleading</u>

Movant Defendants first argue that by referring to "Defendants" throughout his SAC, Thompson fails to give them fair notice under Federal Rule of Civil Procedure 8(a). Allegations "directed at multiple defendants can be adequate to plead personal involvement" where they "put the defendants on notice of what exactly they might have done to violate [Thompson's] rights." *Rivera v. Lake Cnty.*, 974 F. Supp. 2d 1179, 1194 (N.D. Ill. 2013) (citing *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009)).

Here, Thompson pleads sufficient facts to put Defendants on notice of the claims against them. Thompson does not merely name the Defendants in the caption and omit them from the body of his SAC. *Cf. Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974). Nor does he allege that individuals other than Defendants may have participated in the alleged misconduct. *Cf. Atkins v. Hasan*, No. 15 CV 203, 2015 WL 3852724 (N.D. Ill. June 22, 2015). Rather, as shown by the background section above, Thompson presents more

---

[2] The motion to dismiss is not brought on behalf of Officer Defendants Winston, Jackson, Walker, Velasquez, J. Dunn, and Williams. R. 42 at 1; R 44 at 1. Additionally, named Defendants include Officer James Dunn and Officer J. Dunn. R. 35 at ¶¶ 9, 17. Because there are two different Star numbers indicated in the SAC, the Court understands that Thompson is referring to two separate Officer Defendants, and only Officer James Dunn moves to dismiss.

than enough factual details "to present a story that holds together." *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018).

True, "Defendants," as defined by Thompson, includes not just the Officer Defendants but also Cook County, Sheriff Dart, and Director Acosta. However, taking the allegations together as a whole and drawing all reasonable inferences, the Court construes the SAC to assert: (1) excessive force, failure to intervene, and conspiracy claims under 42 U.S.C. § 1983 against the Officer Defendants; (2) a *Monell* claim against Dart and Acosta in their official capacities; (3) state law indemnity and *respondeat superior* claims against Dart in his official capacity; and (4) state law indemnity, *respondeat superior*, and negligence claims against Cook County. Likewise, "reading the allegations sensibly and as a whole," it is clear that Thompson is referring to the Officer Defendants when alleging the specific conduct in connection with the application, adjustment, and removal of the ankle band. *Engel v. Buchan*, 710 F.3d 698, 710 (7th Cir. 2013).

Certainly, "group pleading is not an ideal practice, especially where it would seem possible to name a particular defendant, or at least a subset of defendants, as committing or participating in certain conduct." *Hyung Seok Koh v. Graf*, No. 11-CV-02605, 2013 WL 5348326, at *5 (N.D. Ill. Sept. 24, 2013). But Thompson's SAC "is coherent, and the basis of his claims is easily understood." *Kuri v. City of Chi.*, No. 13 C 1653, 2014 WL 114283, at *7 (N.D. Ill. Jan. 10, 2014) (denying motion to dismiss malicious prosecution claim that attributed all alleged misconduct to eight defendant

officers collectively). Therefore, Thompson's use of group pleading does not warrant dismissal.

    II.    <u>Claims Against Officer Defendants</u>

Movant Defendants further argue that Thompson fails to adequately plead his excessive force, failure to intervene, and conspiracy claims.

    A. Excessive Force

The Fourteenth Amendment protects pretrial detainees from the use of excessive force. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). A plaintiff must allege that the force used was objectively unreasonable, which "turns on the facts and circumstances of each particular case" when viewed "from the perspective of a reasonable officer." *Id.* (citation omitted). The Court may consider several factors, including the relationship between the need to use force and the amount of force used, the extent of the plaintiff's injury, any effort by the officer to limit his or her use of force, the severity of the security concern, and the threat perceived by the officer. *Id.*

Movant Defendants argue that Thompson does not adequately allege that the Officer Defendants' conduct was objectively unreasonable, particularly given Thompson's previous AWOL status and the adjustment of the band after he initially complained. Critically, however, Thompson alleges that he told the Officer Defendants the ankle band was still too tight after they adjusted it. He also alleges that they knew about his circulation issues, swelling, procedures, and complaints of pain in his right leg, and about the potential risks of applying the band on that compromised leg. He finally alleges that the Officer Defendants placed, reapplied,

7

and allowed the band to remain on his right leg in an extremely tight fashion, refusing to loosen it or consider alternative placement until a few weeks before the amputation. Taken together, those allegations permit the reasonable inference that the Officer Defendants' conduct was objectively unreasonable. In a related context, courts have denied motions to dismiss excessive force claims where a plaintiff alleges that officers were told that handcuffs were too tight and painful as applied. *See, e.g.*, *Brown v. City of Chi.*, 594 F. Supp. 3d 1021, 1033–34 (N.D. Ill. 2022) (denying motion to dismiss excessive force claim notwithstanding the plaintiff's "threadbare" allegations that his handcuffs were too tight and caused him pain which he communicated to the officer defendants); *see also Verser v. Hubbard*, No. 10 C 7513, 2011 WL 2173754, at *2 (N.D. Ill. June 1, 2011). The same result is appropriate here.

Movant Defendants further argue that Thompson fails to sufficiently allege each Officer Defendant's personal involvement by referring to the collective "Defendants." Individual liability under § 1983 requires a defendant's personal involvement in the deprivation of a constitutional right. *Kuhn v. Goodlow*, 678 F.3d 552, 555–56 (7th Cir. 2012). But Thompson is not required to identify which officer performed each specific action before he has the opportunity to conduct discovery. *See Carter v. Judkins*, No. 19 C 7493, 2021 WL 1315628, at *2 (N.D. Ill. Apr. 8, 2021) (denying motion to dismiss excessive force claim against officers who plaintiff did not specifically identify as being involved in his alleged assault). Of course, to hold the Officer Defendants liable, Thompson will eventually have to show how each was personally responsible for his injuries. *See Grieveson v. Anderson,* 538 F.3d 763, 777

8

(7th Cir. 2008). But he has done enough at this stage to avoid dismissal of the excessive force claim against the Officer Defendants.

B. Failure to Intervene

To state a claim for failure to intervene, a plaintiff must plead that an officer "(1) had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring." *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009).

Drawing all reasonable inferences in Thompson's favor, he plausibly alleges that the Officer Defendants had reason to know their fellow officers were using excessive force because they knew that Thompson had circulation issues, swelling, and surgeries on his right leg, were aware of the potential risks of placing an ankle band on that leg, and observed their fellow officers apply and reapply the band in a tight fashion on that leg. It is also plausible that they could have "at least cautioned [those who used excessive force] to stop" because they were allegedly present for the application, adjustment, and removal of the band in connection with Thompson's procedures. *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (citation omitted); *see also Hyung*, 2013 WL 5348326, at *12.

That Thompson does not differentiate between Officer Defendants who applied the band and those failed to intervene is not fatal at this stage. An "officer may be held to account both for his own use of excessive force on the plaintiff, as well as his failure to take reasonable steps to stop the use of excessive force by his fellow officers." *Sanchez v. City of Chi.*, 700 F.3d 919, 925–26 (7th Cir. 2012) (citation omitted). Thus,

9

it is "not implausible to plead claims of excessive force and failure to intervene against the same officers." *Campbell v. City of Chicago*, No. 17 C 4467, 2018 WL 4352614, at *5 (N.D. Ill. Sept. 12, 2018). As to the failure to intervene claim, the motion to dismiss is denied.

### C. Conspiracy

To state a claim for conspiracy, a plaintiff need only identify the parties to the alleged conspiracy, their purpose, and the approximate dates of the conspiracy. *Miller v. Fisher*, 219 F. App'x 529, 533 (7th Cir. 2007). Thompson identifies the parties to the conspiracy; the Officer Defendants; their general purpose, using excessive force on Thompson and protecting each other from liability; and the approximate dates of the conspiracy, from the initial application of the band to his right ankle in October 2020 through the relocation of the band to his right wrist and the amputation of his leg in April 2021.

Movant Defendants argue that the use of "Defendants" dooms his conspiracy claim as well. But Thompson specifically alleges the actions of the Officer Defendants from the initial application of the band to his right ankle through the relocation of the band to his right wrist. These "allegations give sufficient notice of the contours of the conspiracy claim, and no greater specificity is required to survive a motion to dismiss." *Sanchez v. Village of Wheeling*, 447 F. Supp. 3d 693, 705 (N.D. Ill. 2020); *see also Senalan v. Curran*, 78 F. Supp. 3d 905, 914 (N.D. Ill. 2015) (denying motion to dismiss § 1983 claim against officer defendants for conspiracy to use excessive force). The motion to dismiss the conspiracy claim is therefore denied.

III. *Monell* Claim

Movant Defendants also urge this Court to dismiss Thompson's *Monell* claim. To state a claim under *Monell*, Thompson must plausibly allege that a municipal action is the "moving force" behind the violation of his constitutional rights and demonstrates municipal fault. *See Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 826 (7th Cir. 2022) (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397 (1997)). A municipal action may take the form of an express policy, widespread practice tantamount to a custom, or a decision by a final policymaker. *Id.* Importantly, *Monell* claims are not subject to a heightened pleading standard. *White v. City of Chi.*, 829 F.3d 837, 843–44 (7th Cir. 2016). Thompson relies on the first two types of municipal action, which the Court addresses in turn:

A. Express Policy

Thompson first asserts that his injury is attributable to the CCSO's express policy of applying ankle monitor bands in an extremely tight fashion. To start, he adequately alleges the existence of an express policy. Specifically, he alleges that when he complained to an officer that the band was tightly pressed against his skin such that he was unable to place his fingers between the band and his ankle, the officer refused to loosen it further and explained that bands "are required to be tight to prevent tampering." R. 35 at ¶ 35. The reasonable inference from that reference to a "requirement" is that the officers were acting pursuant to a CCSO directive that ankle bands must be applied in such an extremely tight fashion.

11

He also adequately alleges that the application of that policy was the "moving force" behind the amputation of that leg, and that the CCSO is at fault. Critically, he alleges that notwithstanding his circulation issues, there was no indication of any need for amputation after his successful May 2020 surgery and then again after his successful March 2021 surgery until the tight application of the ankle band to his right leg pursuant to that policy. Such factual allegations go beyond mere conclusory assertions regarding but-for and proximate causation. In addition, taking well-pleaded allegations as true and drawing all reasonable inferences in his favor, Thompson adequately alleges that the CCSO knew about the risk created by the policy and failed to take appropriate steps to protect him. *See Treadwell v. Salgado*, No. 19 C 3179, 2021 WL 3129290, at *7 (N.D. Ill. July 23, 2021) (denying dismissal of *Monell* claim for failure to allege causation and deliberate indifference) (citing *Thomas v. Cook Cnty. Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010)).

Moreover, the specificity of Thompson's express policy theory alleviates any risk of a fishing expedition. It does not rely on mere boilerplate. *Cf. Kowalski v. Cnty. of DuPage*, No. 13 CV 526, 2013 WL 4027049, at *2 (N.D. Ill. Aug. 7, 2013). Nor does it "encompass virtually all the activities of a police department and every contact it has with the public." *Cf. Armour v. Country Club Hills*, No. 11 C 5029, 2014 WL 63850, at *7 (N.D. Ill. Jan. 8, 2014). Rather, the allegations are narrowly tailored to the use of electronic monitoring ankle bands on pretrial detainees. It would be unreasonable to expect Thompson to provide more detail than he has without the benefit of discovery. *See Brown v. Dart*, No. 14–cv–07945, 2015 WL 4035568, at *3

(N.D. Ill. June 30, 2015) (denying motion to dismiss *Monell* claim where allegations were "sufficient to place the Cook County Sheriff's Office on notice of the nature of the claims against it and for the Court to find that [plaintiff] has 'give[n] enough detail about the subject-matter of the case to present a story that holds together'") (quoting *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011)). Accordingly, Thompson's allegation of an express policy of applying ankle bands in an extremely tight fashion is sufficient to state a claim.

B. Widespread Practice

Thompson further contends that his injury is traceable to several widespread practices, namely applying ankle bands too tightly, not investigating pretrial detainees' medical histories to determine whether ankle bands are contraindicated,[3] applying ankle bands without regard for pretrial detainees' relevant medical histories, and maintaining a "code of silence" by which officers fail to report misconduct such as placing ankle bands on too tightly. But Thompson does not allege sufficient facts to show that the practices are so widespread "as to constitute a governmental custom," rather than an isolated event. *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). Although Thompson does not need to provide examples of "every other or even one other individual" who suffered due to this practice, *White*,

---

[3] Thompson classifies the failure to investigate medical histories as an express policy. However, because Thompson essentially points to a gap in a policy, rather than an affirmative directive, this Court reviews this allegation as a widespread practice. *See Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005) ("[I]t is more confusing than useful to distinguish between claims about express policies that fail to address certain issues, and claims about widespread practices that are not tethered to a particular written policy[.]").

13

829 F.3d at 844, he must "plausibly allege that such examples exist." *Gill*, 850 F.3d at 344. Thompson's vague references to "prior instances of similar misconduct" without any specific facts as to those instances do not allow for the reasonable inference of a custom. *See id.* (holding that the specific actions of government employees in the plaintiff's case alone, without more, did not create the reasonable inference that a widespread practice existed); *see also Milchtein*, 42 F.4th at 826 ("[I]dentifying just a few instances of official action is usually insufficient to show the existence of an entrenched practice with the force of policy."); *Hamilton v. Oswego Community Unit School District 308*, No. 20 C 0292, 2021 WL 767619, at *10–11 (N.D. Ill. Feb. 26, 2021).[4]

C. Cook County

As discussed, the Court understands that Thompson is pursuing a *Monell* claim against the CCSO rather than Cook County itself. However, under Illinois law, Cook County must indemnify the CCSO for any official capacity claims. *Carver v. Sheriff of LaSalle Cnty., Ill.*, 324 F.3d 947, 948 (7th Cir. 2003) ("[A] county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer (sheriff, assessor, clerk of court, and so on) in an official capacity."); *see also Wilson v. Cook Cnty.*, No. 19 C 7824, 2020 WL 5642945, at *3 n.3 (N.D. Ill. Sept.

---

[4] The SAC references a "failure to adequately punish and discipline" and a "failure to train" in connection with these practices. R. 35, ¶58. The Court understands Thompson as alleging these theories as the causal link between the practices and his injury, not as independent practices. Since the Court finds that Thompson has not adequately pled the existence of a widespread practice, the Court does not reach the issue of whether he adequately pled causation.

14

22, 2020) (noting that Cook County "must remain a party for indemnification purposes to the extent that any claims proceed against . . . Dart"). Thompson sufficiently pleads a *Monell* claim against the CCSO, so Cook County remains in this suit as a necessary party for potential indemnification purposes.

IV. State Law Claims

Movant Defendants urge this Court to dismiss Thompson's *respondeat superior* and negligence claims against Cook County because it is not vicariously liable for the acts of Sheriff Dart and his employees. In Illinois, the Sheriff is "not an employee of the county in which [he] serves." *Askew v. Sheriff of Cook Cnty.*, 568 F.3d 632, 636 (7th Cir. 2010). As a result, Cook County cannot be held vicariously liable for the actions taken by Sheriff Dart or his employees. *See Riley v. Cnty. of Cook*, 682 F. Supp. 2d 856, 860 (N.D. Ill. 2010). Accordingly, the motion is granted as to Thompson's negligence and *respondeat superior* claims against Cook County.[5] However, because certain federal claims survive the motion to dismiss, the Court will retain supplemental jurisdiction over the remaining state law claims. *See Williams v. City of Chi.*, 315 F. Supp. 3d 1060, 1084 (N.D. Ill. 2018).

**Conclusion**

For the foregoing reasons, the motion to dismiss is granted in part and denied in part. The motion is denied as to Counts I, III, IV, and V. The motion is granted as to the widespread practice claim in Count II, but otherwise denied. The motion is also

---

[5] Because the Court dismisses the state law *respondeat superior* and negligence claims against Cook County on that basis, the Court declines to address the parties' arguments regarding the Illinois Local Governmental and Governmental Employees Tort Immunity, 745 ILCS 10/1-101, *et seq*.

15

granted as to Count VI and as to Count VII with respect to Cook County only. The dismissal in part of Count II is without prejudice. If Thompson believes he can cure the deficiencies identified here as to that claim, he may move for leave to file an amended complaint within 30 days of the date of this opinion. Any such motion should attach a redlined comparison between the complaint and the amended complaint, and should be supported by a brief of no more than five pages describing how the proposed amended complaint cures the deficiencies in the current complaint. Should Thompson choose to file such a motion, Defendants should not respond unless ordered to do so by the Court.

ENTERED:

_Thomas M Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated: April 7, 2023

16